Good morning. Good morning, counsel. You can proceed. Members of the court, I'm Cody Harris, representing Petitioner-Napoleon Matthew Davies. I'd like to reserve two minutes of my time for rebuttal. All right. Please let us know how good you can be. Yes, Your Honor. The law has changed in an important way since the briefing closed in this matter, and that is that the court issued United States v. McIntosh, which rejected the government's primary merits argument in this case, which is that Section 542 does not apply to individuals who are engaged in medical marijuana conduct that complies with state law. And so that change is so profound with respect to the merits argument. I think it really leaves the procedural argument here that the government has brought, which is that Mr. Davies' plea waiver bars this petition completely, and that is also incorrect. Mr. Davies signed a waiver which includes a two-sentence long lateral attack waiver. Those two sentences are redundant, and all they do is limit Mr. Davies' ability to challenge his conviction or sentence, to attack his conviction or sentence. No one is arguing that he's attacking his conviction, so the only question is whether this petition attacks his sentence, and it does not. So this is a 2241, right? Correct. And do the words 2241 appear anywhere in the waiver? They do, Your Honor. He agrees not to file a motion under 28 U.S.C. 2241 attacking his sentence. So the question boils down to whether or not this is an attack on his sentence. We argue that it is not. The attack has a target, and the target is the government's homophilic expenditure of funds under Section 542. That's the target. Counsel, Judge Gould, if I can interject. Yes, Your Honor. How can he serve his sentence? If he's released, how can he serve his sentence? There are many aspects of his sentence, Your Honor, that will remain untouched, even if the government has prevented him from homophily spending funds. He will remain on supervised release. Supervised release is actually funded through the courts, not through the Bureau of Proceeds, which funds the DOJ's appropriated budget. Right, but your position is that as a consequence of your theory, he must be released from custody. Your Honor, yes, the consequence of the theory. So my question is how can you say that it's not an attack on his sentence if he's going to be released from custody? Again, because the attack is not on his sentence directly. It is not an attack on its validity, its length, its imposition, those are the kinds of claims the court has found barred by a waiver such as this one. It is an attack on the government's unlawful expenditure of funds. But if he gets out, he's not going to serve 60 months, right? That's not the case, Your Honor. He will continue the other aspects of his sentence. 60 months in custody. Will he serve 60 months in custody if he gets out now? If the government can no longer fund that portion of his sentence, then he will not be in custody for that portion of the sentence. That's correct. But the collateral result of preventing the government from spending money, it's not allowed to spend. Of course, that has an effect on Mr. Baby, so that doesn't mean that he's attacking his sentence. And I would also argue, Your Honors, that if the court is not convinced that this isn't an attack on his sentence because his sentence would be affected by enjoining the government from spending money they're not allowed to spend, if the government or if the court is not convinced of that, there still is an argument in Geronimo and in Arias Espinosa. The court was careful in footnotes to carve out an exception that even if there is a waiver that is valid about challenging a sentence, and again, we don't concede that's what we're doing here, but even if there is, that cannot bar a challenge to a sentence that violates the law. And in this instance, by spending money they are not allowed to spend, they are violating the law. Let me ask you this. You cite the recent Ninth Circuit case, but I'm wondering if specifically, how does the continued incarceration of Davies prevent California from implementing its marijuana laws? Why would anyone be dissuaded from entering into the medical marijuana industry based on Davies' continued incarceration? I think there are a few answers to that, Your Honor. One is that it follows directly from McIntosh. McIntosh says, at a minimum, Section 542 prevents the government from prosecuting, not at a maximum, but at a minimum, and it speaks directly to this issue. It says that punishing individuals, the use of the word punishment, prevents a state from implementing, giving full effect to its medical marijuana laws. So that's in McIntosh. In addition, I would direct the court to the amicus brief filed by Senators Mark Leno and Lori Hancock. They explain at great length why this actually prevents the state from giving full effect to its state laws. And also, the court doesn't have to take Mr. Davies' word for it. In the government sentencing memorandum, in the general deterrence portion, down in the court below in the underlying criminal matter, they were arguing for a below-guideline sentence, and they said that the purpose of this says, I'm quoting from the government's brief, it would be a reminder of the potential consequences to similarly situated persons contemplating engaging in the marijuana dispensary business. It is likely sufficient to deter mainstream individuals from engaging in the conduct. That's the government's position. The point of the prosecution was to prevent people from engaging in state law-compliant conduct. That was the purpose of it. That's in the government's brief. And so I think it's very clear that if merely prosecuting somebody for state law-compliant conduct prevents the state from giving full effect to its laws, then surely it flows ineligibly from that proposition that incarcerating somebody does, too. So the issue is simply that Congress has told the government that they cannot spend money in this regard. And so the result of that is that Mr. Davies' portion of his sentence, which relies on those funds, cannot be executed in that way. So is that your argument that why he has to be, if we were to remand the case to the district court to determine if Davies complied with the applicable state law, that's why you're saying he should be released, or what's your? Two points on that, Your Honor. I think under McIntosh clearly a remand at a minimum should be aborted. We argue that there's no need for a remand here in the particular posture of this case because there's nothing in the record, nothing, and there's been no formal allegation that Mr. Davies violated state law at all. In fact, again, if I direct the court to the government sentencing memorandum, this is the government's brief. They say he, quote, had business permits issued by a government entity. He, quote, hired a host of lawyers to ensure compliance with state law. And his marijuana business, quote, paid the state of California about $150,000 in sales tax. So we would be remanding to ask if the government was a wrong then or a wrong now. There's nothing in the record that requires a remand here. The record here supports the view that Mr. Davies complied with state law. Now, in their brief, they- Can I just go back to the waiver for a second? Of course. Typically, this is the atypical waiver in my experience. Typically, the waiver excludes an argument that the sentence actually violates the law, that a duplicate sentence is triggered at least. So is there something implicit in this that if the sentence is actually in violation of the law, that that would not come within the waiver? I think you're right, Your Honor. This is a plea that this particular waiver we've only seen in the Eastern District. And I think it implicit, certainly, through Geronimo, and those were notes in Geronimo and in Arias Espinoza, that it's always implicit that if the sentence violates the law in some way, it can be challenged notwithstanding the waiver. And the government could have written a waiver that maybe would have covered this. There are ways that the government could have at least attempted to do that. And they didn't. And it's clear that any ambiguities, at least if the court thinks it's ambiguous to what the court set these covers to challenge, such as this one, those ambiguities must be construed against the government in Mr. Davies' favor. And with that, I will reserve the balance of my time. All right. Thank you, counsel. Good morning, amendments. This is the Court of Arbitration for the United States. Matthew Davies waived any right to challenge the sentence in exchange for a more favorable sentence. And the language in this waiver is broad, and it's clear he's waived any right to challenge his conviction or his sentence. And this Court said in Geronimo that he didn't waive any. And this Court said the same thing in Schuman, which are both cited in our briefs. Can I just ask you about the right now to challenge Geronimo? Yes. It says there are few well-established presumptions to appeal waivers in our case law. Yes. It says that the defendant can appeal his or her sentence notwithstanding a waiver or the right to appeal when the sentencing clause violates the law. Isn't that what is going on here? Isn't the sentence that was proposed being violated in Rorke Act? I'm sorry. In Rorke, Bach, and that? No, it doesn't. The sentence doesn't violate that restriction. And indeed, Davies has gone to great lengths to say that he's not challenging his sentence. It is not a legal waiver. No, no, no, no. I'm not saying that the government is violating the sentence. I'm saying that the government, by spending money, the POP by spending money on incarcerating someone who had a state-authorized medical marijuana business, that expenditure of that violates the Rohrabacher-Farr commitment. The sentence doesn't violate the law. And I think the most Toronto is talking about there is that Toronto is a threat. To the extent that you're arguing that the sentence, that he's tagging the sentence, that might apply. But what they're arguing is that the government is otherwise violating the law. But he's going to be challenged. And so I don't think you can draw a distinction between his sentence and his execution, for example. If you have a sentence of imprisonment, and you don't have to be imprisoned, then you're not sentenced to anything. It's a practical matter. It's like having a debt and not having to pay it. Do you agree the government is violating the Rohrabacher-Farr amendment by alleviating that sentence? No, and for two reasons. First, it doesn't apply to somebody like Davies, who was charged, plagued, convicted, sentenced, and incarcerated all before. What authority do you have for that? Well, there's no authority on this either way. No, there's no authority for that proposition. So what's your second reason? Well, my second reason is because the record is clear that he wasn't in compliance with the marijuana law. Well, then that comes to whether or not there should be an evidentiary hearing. Right, but the record is clear. The second reason why the government is in a violation, that's whether or not there should be a hearing as to whether the defendant, Davies, by the way, was conducting his business in compliance with the California state law. But he admitted transport-less, so there's no violation unless he was in compliance with state law. He admitted in his written review agreement that at least one of the facilities that he made in profit was $194,000. And it's right down in the California statute's health and safety code, 11362.765a. But I think that would have to be something that would be determined by the district court because it's not really in front of us in this video. Well, but I think in Keystone Land, for example, this court said that there's no need to remand a case where the record is clear. Well, I was just visiting and trying to follow our two recent decisions in looking at contortion. Some cases today, which released the petitioner that said that we might include evidentiary hearing. And those cases, if that term is issued, they were decided after your briefings. Yes, and all of those cases are direct appeals. And so, at least in Suquansett Bar, I'm not quite sure the transparency issue, but at least in that case. I was in that case. I saw all the records. So, that's okay. Thank you. At least in that case, the specifically reserved rights and challenges in their convictions were vacated on appeal. And in the 10 or so cases that were collected together, in the McIntosh case, they had not been confusing who was the guilty yet. So, that's why those defendants were let out of jail and remanded for an evidentiary hearing. And I don't think there was a sufficient record, but here in the agreement, in the factual pieces, that Davey signed on every single page. It says he made a profit at one facility of at least $294,000 in accounts. Did Davey apply to replace the record for that success? Yes, that's the excerpts of the record at 55. Is it in the clear agreement? It is. It's in Exhibit A. It's in the clear agreement, which is the factual pieces supporting. It's rather lengthy here. So, which dispensary is it? That's the CDC Dispensary Account Files. If you go to page 55, line 16, you'll see it says right there, CDC showed a net profit of at least $294,000. Now, I'll say that's important because McIntosh, one point it's a great length to say, is only conduct that's authorized by state law that's even within the scope of the appropriations writer. And the state law actually uses the term authorized. Now, I think the state law authorizes someone to make a profit on medical marijuana. That's the only account in which he made a profit. It's the only one that's set forth in those agreements. Put it that way. Well, that's what dictates the sentence. It's within the plain agreement, right? So, maybe there would have to be a resentencing that just an account filed. Well, it's rather self-shown. I don't get it. So, this is the factual pieces supporting the agreement, and he agreed that it was in compliance with state law in there. He agreed to the facts that show that it was in compliance with state law. So, he's not going to be sent to one of these blank accounts? Yes. And remember, he's not saying that he can't be, he's not saying that he has to be resentenced. In fact, he's gone out of his way to say that he's not challenging his sentence at all. As far as the judgment of McIntosh, what does he say? How is the sentence calculated? Well, the sentence was calculated as he came to the agreement. And the answer is a record. That's 51. There are guidelines calculations that he stipulated to where he agreed that the guidelines range would be 108 to 135. And he got a substantial departure from that in exchange for his guilty plea down to 16 months. So, that's how he got to here, but there's stipulated guideline ranges. And that's the deal he made, that he wouldn't bring a challenge like this in exchange for a substantial discount. But I think one of the facts of the game, that the spending restriction doesn't apply as always. Yeah, I want to understand that from the standpoint, okay, so McIntosh, you distinguish that by virtue of the fact that McIntosh doesn't warrant relief here because the McIntosh panel was concerned that a state's medical marijuana laws would be rendered useless if individuals were unwilling to cultivate and distribute because of their prosecution. And so, that same concern from your perspective doesn't arise in a case such as this because D.B.'s continued incarceration will not dissuade anyone from entering the medical marijuana industry. Is that why you're distinguishing McIntosh? I think it's also based on the statutory text or the appropriations writer text here, which is all written in a prospective way. It talks about preventing the state from implementing the state laws. It's not a substantive change to the law. It's only a temporary restriction. And this court has, in general rule, is that retroactivity units. So, if this court were to interpret the Robocker Farm Amendment as barring AOP from spending funds to incarcerate individuals like babies, is your position that that would be an extension of what we've seen in the past? Yes, that's definitely true, Judge Callahan. It would be an extension, and it would throw open the floodgates to... How many other cases would be affected by this? Well, every marijuana prosecution in the Ninth Circuit for the last... In jail more than Mr. Davies and Hathaway has. For single medical marijuana in the dispensary that was in compliance with state law, then I wonder how many cases there are. Well, they mostly all claim it, Judge Warthog, even though it can't all prove it. I mean, how many prosecutions are on this front? I know, and for medical marijuana cases that are still in jail, I have no idea. How can you stand here and say it's going to open the floodgates when you have no idea? These dispensaries weren't prosecuted for a long time. At least, I mean, I can't. I mean, I can only speak with much familiarity with the Central and Southern Districts, but there are very few of those cases that were brought. I don't think that's right. I think your experience is different, and I would acknowledge that. We do have a large district, and we do have a lot of community. I understand what you're saying about that, but... We're a supplier, I think, and it's just the way it works on the floodplain, but that's the way it's done. I over my time, I have to continue. Does anybody have any other questions? No questions. All right, thank you. Thank you very much. Your Honor, if I may just quickly address a few of the points that Kenneth's made. He brought up Geronimo and Schuman as reasons to say against Mr. Davies. Geronimo, the appeal there, the waiver there, it barred any appeal, full stop. This appeal, or this waiver, bars any right he would have to attack his sentence. It wasn't any right to bring a 2241 petition, period. It was any right to attack the sentence. That's the question. Schuman said that the defendant's interpretation would render the waiver meaningless. Mr. Davies' interpretation would not render the waiver meaningless. All the usual ways that a person challenges his conviction or sentence would be in place. The only thing that was supplied is this admittedly unusual circumstance where it's really a separation of powers issue about having the executive follow the law that Congress has set. He also said that the courts never found that McIntosh applies to someone who was convicted, sentenced, and so on before the rider was passed. And also, that's true in this Lucuzave case. I believe in that case, the conviction took place prior to the enactment of the rider and still the court found McIntosh applied. Well, but the place situation is very different here and the person reserved rights to that challenge. So it's completely different than what the allegations are here. On the plea question, that's correct, but it's not true that the court has ever applied McIntosh to someone who was convicted prior to Section 242. And lastly, it's okay for a dispensary to make money under California law. That's the holistic health case. As long as it was organized as a non-profit, which it was. In our further excerpts of record, all of them are organized as non-profits. Non-profits can be solvent. People who run them can be paid a salary. That's all legal under California law. So that's why this record or remand would be kind of a waste of resources. Unless the court has further questions, I would urge the court to reverse the disreports decision and grant the petition. All right, thank you, Counselor. Thank you. David Sperm versus Ben Arthur. I'll be submitted. And I'll take it on Stanford v. Bryant.
judges: Wardlaw, Gould, Callahan